**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DEAN PIGEON,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 1:22-00447-KD-MU** |
| | ) | |
| **STRAUB BUILDERS, LLC,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

This matter is before the Court on Plaintiffs Dean and Deborah Pigeon's ("Plaintiffs")

Motion for Default Judgment or, Alternatively, Motion for Summary Judgment Against

Defendants Straub Builders, LLC and Fred Straub, (Doc. 48); Undisputed Issues of Material

Fact, (Doc. 48-1); memorandum in support thereof, (Doc. 48-2); evidentiary material in support

thereof, (Doc. 48-3); reply brief in support of their motion, (Doc. 50); supplemental affidavit and

proof of service, (Doc. 54); notice of compliance with the Court's July 17, 2024, Order, (Doc.

55), and attached evidentiary material, (Docs. 55-1–55-3); and supplemental memorandum in

support of their motion, (Doc. 57), and attached evidentiary material, (Doc. 57-1).

Despite being ordered to respond in opposition to the Motion on or before July 2, 2024,

(<u>see</u> Doc. 49), Defendants Straub Builders, LLC ("Straub Builders") and Fred Straub ("Mr.

Straub") (collectively, "Defendants"), who are unrepresented by counsel,[1] have yet to respond.

---

[1] "Only natural persons may appear *pro se*." S.D. Ala. GenLR 83.2; <u>Class v. U.S. Bank Nat'l Ass'n</u>, 734 F. App'x 634, 636 (11th Cir. 2018) ("The right to appear *pro se*, however is limited to parties conducting 'their own cases,' and does not extend to non-attorney parties representing the interests of others."). "Limited liability companies . . . are considered to be artificial entities, and, as such, they cannot appear in federal court *pro se*." <u>IBEW-NECA Loc. 505 Welfare and Pension Plans v. R.D. Elec., LLC</u>, No. 09-CV-11-KD-C, 2009 WL 981913, at *1 (S.D. Ala. Apr. 13, 2009).

Indeed, Straub Builders has not participated in this litigation at all.[2] Mr. Straub's participation is limited to his filing of an answer, (see Doc. 15), and appearance at a Rule 37 conference, (see Doc. 31 at 1; Doc. 48-2 at 3).[3] Upon consideration and for the reasons set forth herein, Plaintiffs' Motion, (Doc. 48), is **GRANTED in part** as follows: default judgment is granted against Straub Builders pursuant to Rule 55 while summary judgment is granted against Mr. Straub under the theory of unjust enrichment.

## I.  LEGAL STANDARD

### A.  Default Judgment

There is a strong policy of deciding cases on the merits and default judgments are therefore viewed with disfavor. In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). Still, the default concept exists so that "the adversary process will not be halted because of an essentially unresponsive party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (explaining that a plaintiff facing a defendant who fails to answer is "not left to twist in the wind"). "While a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (per curiam) (cleaned up); Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)[4] ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

---

[2] The Clerk of Court entered default against Straub Builders pursuant to Fed. R. Civ. P. 55(a) on February 6, 2023. (Doc. 8).
[3] While the Clerk of Court entered default against Mr. Straub on May 25, 2023, (Doc. 14), the Court construed Mr. Straub's subsequent pro se answer as a motion to file out of time, which it granted, thereby setting aside the Clerk's entry of default against him. (Doc. 16).

On the other hand, a defaulted defendant is not considered to have admitted either facts that are not well-pleaded or conclusions of law. Tyco Fire, 218 F. App'x at 863. "Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis included); Virgin Recs. Am., Inc. v. Lacey, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007) ("While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.").

Rule 55 establishes a two-step process for a plaintiff to obtain a default judgment. Daise v. Washington, No. 21-10281, 2022 WL 405404, at *2 (11th Cir. Feb. 10, 2022) (per curiam); see Fed. R. Civ. P. 55. First, per Rule 55(a), "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The most obvious example, of course, of a defendant's failure "to plead or otherwise defend" is when the defendant does not file an answer. See 2 Fed. R. Civ. P., Rules and Comment. Rule 55 (Feb. 2024). Second, once the clerk has entered a default, the movant may then seek a default judgment against the defaulting party. S. Geo-Env't Consultants, Inc. v. Herzog, No. 09-CV-127-WS-N, 2009 WL 2766209, at *1 (S.D. Ala. Aug. 31, 2009). The clerk's entry of default is a prerequisite to a default judgment. See id. ("The point is that a clerk's entry of default must precede an application to the district judge for entry of default judgment.").

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

The clerk must enter default judgment when and only when three criteria are present: (1) the defendant has defaulted for failure to appear; (2) the defaulted defendant is not a minor or incompetent person; and (3) "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). "The rule carefully limits the clerk's authority to those cases where entry of judgment is purely a ministerial act, since sound policy dictates that the clerk should not be invested with discretionary power." Combs v. Coal & Min. Mgmt. Servs., Inc., 105 F.R.D. 472, 474 (D.D.C. 1984) (internal quotations omitted). The plaintiff must apply to the district court in all other cases. Fed. R. Civ. P. 55(b)(2).

"Ordinarily, *unless a plaintiff's claim against a defaulting defendant is for a sum certain*, the law requires the district court to hold an evidentiary hearing to fix the amount of damages." PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1292 n.9 (S.D. Ala. 2010) (emphasis added and internal quotations omitted). An evidentiary hearing is not a per se requirement, however; no such hearing is necessary "where all essential evidence is already of record." SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). "Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required." Virgin Recs., 510 F. Supp. 2d at 593–94; Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985) (per curiam) ("[W]e have held that a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."); Antoine v. Atlas Turner, Inc., 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate . . . due process . . . .").

Before entering default judgment, the district court must ensure that it has personal jurisdiction over the defendant. Doe v. Hilt, No. 19-CV-272-B, 2021 WL 1219235, at *2 (S.D.

Ala. Mar. 3, 2021); 2 Fed. R. Civ. P., Rules and Comment. Rule 55 ("Before entering a default judgment, the court may—and maybe must—satisfy itself that it has personal jurisdiction over the absent defendant."). Similarly, the court must satisfy itself of its subject-matter jurisdiction over the case. Glennon v. Rosenblum, 325 F. Supp. 3d 1255, 1262 (N.D. Ala. 2018). This is because a default judgment entered without jurisdiction is void, 10A Fed. Prac. & Proc. Civ. § 2685 n.18 (4th ed. June 2024), and is thus subject to being set aside under Rule 60(b)(4), Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc., 743 F. App'x 390, 391–92 (11th Cir. 2018) (per curiam); see Fed. R. Civ. P. 55(c) ("The court may set aside . . . a final default judgment under Rule 60(b)."). In sum, the district court may enter default judgment against a defendant if and only if: (1) both subject-matter and personal jurisdiction exist; (2) the allegations in the complaint state a claim against the defendant; and (3) the plaintiff has shown the damages to which he is entitled. U.S. v. Patka, No. CV 117-062, 2018 WL 3236050, at *1 (S.D. Ga. July 2, 2018).

### B. Summary Judgment

District courts shall grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Per S.D. Ala. CivLR 56(d), "The Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment." Accord Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). "Application of the deeming order does not, however, automatically entitle the movant to summary judgment." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008). Rather, the movant *always* bears the initial responsibility of informing the

district court of the basis for its motion and identifying the parts of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

In other words, the movant "continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." Reese, 527 F.3d at 1268; see also U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Mia., Fla., 527 F.3d 1253, 1269 (11th Cir. 2008) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). At the least, the district court must review all the evidentiary materials submitted in support of the motion for summary judgment, but "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted." One Piece of Real Prop., 363 F.3d at 1101–02. This approach is codified in Rule 56(e)(3): "If a party . . . fails to properly address another party assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." See also Powell v. Am. Remediation & Env't, Inc., 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014) ("Where a party wholly fails to respond to a summary judgment motion, the district court must make sure that it nonetheless is appropriate to enter summary judgment against the party that did not respond . . . .").

## II.  ANALYSIS

### A.  Default Judgment Is Entered Against Straub Builders

Here, the Clerk of Court entered default against Straub Builders in February 2023, (Doc. 8), making it appropriate to proceed with a Rule 55(b) default-judgment analysis against it. Cf. Douglas v. Faldoski, No. 22-CV-79-CG-B, 2022 WL 18401013, at *2 (S.D. Ala. Dec. 22, 2022) ("Where there has been no entry of default, there can be no default judgment.").

### i.      Plaintiffs Make the Requisite Jurisdictional Showings

"Personal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process." Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 925 n.15 (11th Cir. 2003). The district court lacks personal jurisdiction over a defendant who has not been properly served. Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990); Fuqua v. Turner, 996 F.3d 1140, 1154 (11th Cir. 2021) ("Proper service of process is a jurisdictional prerequisite."). Since the Due Process Clause's requirement that a court have personal jurisdiction protects an individual liberty interest, Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982), "[t]ypically, insufficient service of process on a party operates to prohibit a court from entering a default judgment against that party," Rismed Oncology Sys., Inc. v. Baron, 638 F. App'x 800, 805–06 (11th Cir. 2015) (per curiam).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). In federal court, an "unincorporated association that is

subject to suit under a common name"—like a limited liability company—may be served by a method permissible under the law of the state where the district court is located or where service is made. <u>See</u> Fed. R. Civ. P. 4(h)(1)(A) (incorporating Fed. R. Civ. P. 4(e)(1)). Alabama law permits service of process on an artificial entity by certified mail under certain conditions. <u>See</u> Ala. R. Civ. P. 4(i)(2); <u>S. Guar. Ins. Co. v. Robinson</u>, No. 11-CV-506-KD-B, 2012 WL 353767, at *2 (S.D. Ala. Feb. 2, 2012) ("[T]he Alabama Rules of Civil Procedure provide for service by certified mail, return receipt requested, sent by counsel and effective upon the date of delivery to the 'named addressee or the addressee's agent as evidence[d] by signature on the return receipt.'"). Specifically, the relevant provision provides:

> (A) When Proper. When the plaintiff files a written request with the clerk for service by certified mail, service of process shall be made by that method. Alternatively, the attorney or party filing the process and complaint may initiate service by certified mail as provided in this rule.

> (B) How Served. . . .

> (ii) Alternatively, the attorney or party filing the process and complaint or other document to be served may obtain a copy of the filed pleading from the clerk or, if the pleading was filed electronically, use the copy returned electronically by the clerk. The attorney or party shall then place that copy of the process and complaint or other document to be served in an envelope and address the envelope to the person to be served with instructions to forward. *In the case of an entity within the scope of one of the subdivisions of Rule 4(c),[5] the addressee shall be a person described in the appropriate subdivision. The attorney or party shall affix adequate postage and place the sealed envelope in the United States mail as certified mail with instructions to forward, return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered. The return receipt shall be addressed to the clerk of the court issuing the process and shall identify the case number of the case in which the pleading has been filed.* Upon mailing, the attorney or party shall immediately file with the court an "Affidavit of

---

[5] Limited liability companies are "entities within the scope of one of the subdivisions of Rule 4(c)." <u>See</u> Ala. R. Civ. P. 4(c)(6).

Certified Mailing of Process and Complaint." That affidavit shall verify that a filed copy of the process and complaint or other document to be served has been mailed by certified mail in accordance with this rule.

(C) When Effective. *Service by certified mail shall be deemed complete and the time for answering shall run from the date of delivery to the named addressee or the addressee's agent as evidenced by signature on the return receipt. Within the meaning of this subdivision, "agent" means a person or entity specifically authorized by the addressee to receive the addressee's mail and to deliver that mail to the addressee. Such agent's authority shall be conclusively established when the addressee acknowledges actual receipt of the summons and complaint or the court determines that the evidence proves the addressee did actually receive the summons and complaint in time to avoid a default.* An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within time to avoid a default. In the case of an entity included in one of the provisions of Rule 4(c), "defendant," within the meaning of this subdivision, shall be such a person described in the applicable subdivision of 4(c).

(D) Failure of Delivery. Failure to make service within sixty (60) days from issuance of the process by the clerk of the court and failure to make proof of service do not affect the validity of service perfected beyond that period.

Ala. R. Civ. P. 4(i)(2) (emphases added).

Here, Plaintiffs' counsel testifies that process was properly served via certified mail on Straub Builders through William M. Lyon, Jr., the person identified with the Alabama Secretary of State's office as the registered agent for Straub Builders. (Doc. 54 at 1; Doc 55 at 2; Doc. 55-2; see Ala. Code § 10A-1-5.31(b)(1) (2024) ("A registered agent: is an agent of the entity on which may be served any process, notice, or demand required or permitted by law to be served on the entity . . . ."). Plaintiffs also submit a copy of the certified-mail return receipt that was addressed to "William M. Lyon, Jr., Esq. Registered Agent" and signed by him on January 13,

2023. (Doc. 54 at 3).[6] Under Alabama law, the completion and filing of a return of service constitutes prima facie evidence of that service. Hooie v. Barksdale, 93 So. 3d 942, 945 (Ala. Civ. App. 2012). It is well-established that both service of process within the forum[7] and citizenship or domicile of the forum state are independent bases for general personal jurisdiction. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880–81 (2011). A limited liability company that is an Alabama citizen is undoubtedly subject to general personal jurisdiction under Alabama law. Intersport, Inc. v. T-Town Tickets LLC, 896 F. Supp. 2d 1106, 1112 (N.D. Ala. 2012). Accordingly, by providing prima facie evidence of proper service of process of Straub Builders, an Alabama citizen, Plaintiffs make a prima facie showing of personal jurisdiction over it. See Fed. R. Civ. P. 4(k)(1)(A).

For federal diversity jurisdiction to attach, all parties must be of completely diverse citizenship and the amount in controversy must exceed $75,000. Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1085 (11th Cir. 2010); see 28 U.S.C. § 1332(a). A limited liability company is a citizen of any state of which a member of the company is a citizen. Rolling Greens MHP, LP v. Comcast SCH Holdings LLC, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam). The party invoking federal jurisdiction bears the burden of establishing facts supporting its existence by a preponderance of the evidence. Osting-Schwinn, 613 F.3d at 1085.

Here, the First Amended and Supplemental Complaint, (Doc. 53),[8] properly alleges that Defendants Straub Builders[9] and Mr. Straub are citizens of Florida and that Plaintiffs are citizens

---

[6] The Court previously ordered Plaintiffs to file an evidentiary submission and/or legal argument sufficient to demonstrate valid service of process on Straub Builders such that default judgment entered against it would not be void for lack of personal jurisdiction. (Doc. 51 at 8).

[7] Cf. Ala. R. Civ. P. 4.2(a) ("All process may be served anywhere in this state . . . .").

[8] Plaintiffs were ordered to file an amended complaint to correct certain deficiencies in the allegations in support of diversity jurisdiction and to properly allege the citizenship of the parties. (Doc. 51 at 2–4).

[9] Plaintiffs allege that the only member of Straub Builders is Fred Straub, a Florida citizen. (Doc. 53 at 2); see Rolling Greens, 374 F.3d at 1022 ("The federal appellate courts that have answered this question have all answered

of Louisiana. Plaintiffs pray for "all funds paid to them by Defendants that were not used in the construction of their home," in addition to punitive damages and interest. (Id. at 4). Specifically, Plaintiffs allege that, pursuant to the terms of the agreement with Defendants, they paid Defendants approximately $130,000, $30,000 of which was spent on the construction project and $10,000 of which was returned to Plaintiffs.[10] Therefore, Plaintiffs seek around $90,000 in damages, along with punitive damages and interest, (id. at 4), clearly exceeding § 1332(a)'s jurisdictional threshold. See Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) ("A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. . . . Generally, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'").

### ii. The Factual Allegations State Viable Causes of Action Against Straub Builders for Breach of Contract under Alabama Law

"A default judgment is unassailable on the merits *but only so far as it is supported by well-pleaded allegations*." Nishimatsu, 515 F.2d at 1206. It thus cannot stand on a complaint that fails to state a claim. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). Facing a motion to dismiss, the district court assesses whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

it in the same way: like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen. We join them in this holding.").

[10] "Finally, in June 2022, after more than a year of demand, Defendants sent Plaintiff[s] three checks for $5,000, one of which was returned for insufficient funds." (Doc. 53 at 3).

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Alabama law firmly embraces the concept of freedom of contract" such that "[c]ontracts between competent parties, voluntarily and fairly made, are valid and enforceable." Berkel and Co. Contractors, Inc. v. Providence Hosp., 454 So. 2d 496, 505 (Ala. 1984). The elements for a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendants' nonperformance; and (4) resulting damages. Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002). "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 673 (Ala. 2001); see also Shirley v. Lin, 548 So. 2d 1329, 1332 (Ala. 1989) ("The essential elements of a contract are as follows: an agreement, consideration, two or more contracting parties, a legal object, and capacity.").

The First Amended and Supplemental Complaint's[11] well-pleaded allegations plausibly state a breach-of-contract claim against Straub Builders under Alabama law. Plaintiffs plausibly allege that they entered into a contract with Straub Builders for the construction of a home in Orange Beach. (Doc. 53 at 2). Provided that Plaintiffs substantially performed their contractual obligations, they may sue under the contract despite their failure to *fully* perform. See Harrison v. Family Home Builders, LLC, 84 So. 3d 879, 889 (Ala. Civ. App. 2011) ("Substantial performance is the antithesis of material breach. If a breach is material, it follows that substantial performance has not been rendered."). Under the relevant factors for assessing the materiality of

---

[11] As noted *supra*, Plaintiffs were previously ordered to file an amended complaint to correct certain deficiencies in the Complaint's jurisdictional allegations. However, the two pleadings' substantive allegations—i.e., the factual allegations and legal claims asserted—are identical. (Compare Doc. 53 with Doc. 1).

a breach under Alabama law[12] and the Alabama Supreme Court's description of a material breach as "one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract,"[13] Plaintiffs plausibly allege that they substantially performed by advancing Defendants about $130,000 under the contract while Straub Builders materially breached by failing to complete the project as agreed by May 2021. (See Doc. 53 at 2–3).

Upon learning of Straub Builder's material breach, Plaintiffs were excused from making further payments under the contract. See Lem Harris Rainwater Fam. Tr. v. Rainwater, 373 So. 3d 1089, 1096 (Ala. 2022) ("Ordinarily, a contract is binding so long as each party performs its obligations under it. If either party materially breaches the contract, the other party is excused from performing it."). Finally, Plaintiffs plausibly allege sustaining at least the net amount given to Defendants for the fruitless project in damages. See Baldwin v. Panetta, 4 So. 3d 555, 563 (Ala. 2008) ("The owners established their right to recover on the breach-of-contract counterclaim because, in addition to proving the builders' breach, they also proved their own performance under the contract and damages.").[14]

---

[12] In Rose v. Davis, the Alabama Supreme Court considered the following factors to determine whether a breach was material:

    (a)  the extent to which the injured party will be deprived of the benefit which he reasonably expected;
    (b)  the extent to which the injured party can be adequately compensated for the part of the benefit of which he will be deprived;
    (c)  the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
    (d)  the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
    (e)  the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

474 So. 2d 1058, 1061 (Ala. 1985) (quoting Restatement (Second) of Contracts § 241 (1976)).
[13] Sokol v. Bruno's, Inc., 527 So. 2d 1245, 1248 (Ala. 1988).
[14] As breach-of-contract and unjust-enrichment claims that are based on the same facts and contract are mutually exclusive under Alabama law, Blackmon v. Renasant Bank, 232 So. 3d 224, 228 n.4 (Ala. 2017), only Plaintiffs' claim for breach of contract against Straub Builders is considered. (See Doc. 48-2 at 6–10) (arguing that default judgment or summary judgment (under a breach-of-contract theory or alternatively for unjust enrichment) would be appropriate). Plaintiffs' express contract with Straub Builders precludes an unjust enrichment claim against it. See Univalor Trust, SA v. Columbia Petroleum, LLC, 315 F.R.D. 374, 382 (S.D. Ala. 2016) ("[T]he existence of an

### iii.   Plaintiffs Adequately Show Damages to Which They are Entitled

In the default judgment context, "a court has an obligation to assure that there is a legitimate basis for any damage award it enters." Hendricks, 740 F. Supp. 2d at 1292 (citing Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003)). Speaking as to when an evidentiary hearing must precede the Court's entry of a default judgment, Judge Steele clarified:

> In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anhesuer Busch*, 317 F.3d at 1266. Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp. 2d at 605 ("In considering the amount of damages . . . , the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp. 2d at 593–94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show . . . damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, at *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."). In this case, PNCEF has not requested a damages hearing, but has instead submitted evidence in support of its requested damages amount. In light of the foregoing authorities and circumstances, the damages determination will stand or fall on PNCEF's written evidentiary submission, without the need for a full-blown hearing.

Hendricks, 740 F. Supp. 2d at 1292 n.9.

Under the Alabama law of contracts, "where no remedy for breach is provided by the contract, the non-breaching party may elect the remedy he wishes to pursue under general contract law." McDonald v. Schwartz, 706 So. 2d 1230, 1232 (Ala. Civ. App. 1997). "Alabama law is well settled that the damages awarded in an action for breach of contract should be an

---

express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable

amount sufficient to return the nonbreaching party to the position he would have occupied had the breach not occurred." <u>HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.</u>, 799 So. 2d 177, 183 (Ala. 2001). However, the remedy of restitution is "equally suited to actions at law and in equity," <u>Polstorff v. Fletcher</u>, 430 F. Supp. 592, 595 (N.D. Ala. 1977), such that Plaintiffs may recover their "interest in having restored to [them] any benefit that [they have] conferred on the other party" in lieu of their expectation or reliance interests, <u>see</u> Restatement (Second) of Contracts § 344 (1981).[15]

Plaintiffs show that they entered into a contract with Straub Builders for the construction of a home located at 3832 Grand Key Drive in Orange Beach, Alabama around November 2020. (Doc. 48-3 at 1, 4 (contract between Dean and Deborah Pigeon and Straub Builders depicted on a form "Contractor Agreement")). Per the contract's terms, Plaintiffs were to pay Straub Builders $392,000, with $50,000 due upon signing and 10% of the total contract price to be held until completion. (<u>Id.</u> at 4). Deborah Pigeon testifies that Plaintiffs advanced Defendants $134,000 to begin construction "[p]ursuant to the terms of the agreement with Defendants." (Doc. 57-1 at 1–2; <u>id.</u> at 4–5 ($50,000 and $84,000 checks from Deborah Pigeon to Straub Builders)).[16] According to the contract, the Straubs' home was supposed to be "substantially completed on or before 5-30-21." (Doc. 48-3 at 4). However, "Defendants failed to take appropriate action to complete the building project." (Doc. 57-1 at 2). In March 2021, Plaintiffs tried to cancel the contract and "requested that Defendants return all unspent funds and make every effort to cancel any material orders that could be cancelled." (<u>Id.</u>). Included in Plaintiffs' evidentiary submission

---

remedy which issues only where there is no adequate remedy at law.").

[15] <u>See also id.</u> at § 373(1) ("[O]n a breach by non-performance that gives rise to a claim for damages for total breach or on a repudiation, the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.").

[16] Given the prior uncertainty in the record over the exact value of damages claimed, Plaintiffs were ordered to file an evidentiary submission explaining the source of their damages claimed in affidavit or similar form. (Doc. 52 at 3–5). Plaintiffs' filing, (Doc. 57), does that.

are images of three checks from Straub Builders to separate vendors showing payments of $19,000; $10,090; and what appears to be $10,590.43. (Id. at 6–9). Thus, Straub Builders paid vendors $39,680.43, making *$94,319.57* the appropriate balance of unspent funds.[17]

Plaintiffs repeatedly requested that the balance of their unspent funds be returned. (Id. at 2). In response to Plaintiffs' repeated requests that the unspent funds be returned, Mr. Straub promised to repay Plaintiffs through proceeds from the sale of his personal condominium. (Id. at 2; Doc. 48-3 at 10 (text message from a contact named "Freddie" saying "I have four potential plans that one has not come through yet but selling my unit is the main one" after having seemingly acknowledged $100,000 due to sender)). In June 2022, after asking for the money for over a year, Mr. Straub sent Plaintiffs three $5,000 checks, although one was returned for insufficient funds. (Doc. 57-1 at 2). "Despite repeated demands, Defendants have not paid Plaintiffs any additional portion of the unspent funds paid to them for purportedly constructing their home, despite the fact that their home has not been constructed." (Id.). Accordingly, Straub Builders owes Plaintiffs **$84,319.57**,[18] *plus* prejudgment interest.

Prejudgment interest may be recoverable in a breach-of-contract case, Ala. Code § 8-8-8 (1975), but only if damages were reasonably certain at the time of the breach. Goolesby v. Koch Farms, LLC, 955 So. 2d 422, 429 (Ala. 2006); Richards v. Gen. Motors Corp., 461 So. 2d 825, 827 (Ala. Civ. App. 1984) ("Prejudgment interest is awarded in Alabama only when the amount due is certain or capable of being made certain.").[19] Section 8-8-8 provides: "*All contracts*, express or implied, for the payment of money, or other thing, or for the performance of any act

---

[17] $19,000 + $10,090 + $10,590.43 = $39,680.43. $134,000 – $39,680.43 = $94,319.57. It appears Ms. Pigeon accidentally transposed numbers when she said that a $10,900 check was sent to Carter & Sons, as the evidence reveals it was a check for $10,090. (See Doc. 57-1 at 7–8).

[18] $94,319.57 – $10,000 (the net value of what Mr. Straub returned to Plaintiffs, accounting for the bounced check, (see Doc. 57-1 at 2)) = $84,319.57.

[19] Prejudgment interest is governed by state law in diversity-of-citizenship actions. Walker v. Life Ins. Co. of N. Am., 59 F.4th 1176, 1192 (11th Cir. 2023).

or duty *bear interest from the day such money*, or thing, estimating it at its money value, *should have been paid*, or such act, estimating the compensation therefor in money, performed." (emphases added).

Plaintiffs "requested that Defendants return all unspent funds" in March 2021, (Doc. 57-1 at 2), marking it the date from which interest should accrue. Cf. Auto Purchasing Ctr., LLC v. Hives, CL-2023-0144, 2023 WL 49822735, at *2 (Ala. Civ. App. Aug. 4, 2023) ("In a breach-of-contract case, a party who is owed money pursuant to the terms of a contract is generally entitled to prejudgment interest accruing from the date the money is owed in addition to the principal sum due."). Because no contract controls the interest rate, it is calculated at the rate of 6% per year. See Burgess Mining and Constr. Corp. v. Lees, 440 So. 2d 321, 338 (Ala. 1983) ("[W]here, as in this case, no written contract controls the interest rate . . . the legal rate of *prejudgment* interest is 6% per annum.") (emphasis included); see also § 8-8-1.[20]

### B. Summary Judgment Is Granted Against Mr. Straub

Plaintiffs move for default judgment against Mr. Straub under Rule 37 for his failure to meaningfully participate in the litigation and refusal to respond to discovery requests and adhere to the Court's Orders. (Doc. 48-2 at 4–5). Alternatively, Plaintiffs move for summary judgment against Mr. Straub under a breach-of-contract theory, or under the alternative theory of unjust enrichment. (Id. at 6–10). Default judgments entered as a sanction for violating a court order or the Federal Rules of Civil Procedure are distinct from those issued under Rule 55. 2 Fed. R. Civ. P., Rules and Comment. Rule 55. While Fed. R. Civ. P. 37(b)(2) "empowers the Court to impose

---

[20] Plaintiffs request prejudgment interest at a rate of 7.5% per annum since November 8, 2022, the date the Complaint was filed. (Doc. 57 at 2). As explained, Plaintiffs are due prejudgment interest from at least March 31, 2021, when they "attempted to cancel the contract and requested that Defendants return all unspent funds and make every effort to cancel any material orders that could be cancelled." (Doc. 57-1 at 2). That said, the appropriate prejudgment interest rate is 6%—not 7.5%—as Ala. Code § 8-8-10 is a *post*-judgment interest statute. See Natures Way Marine, LLC v. Everclear of Ohio, No. 12-CV-316-CG-M, 2015 WL 1757116, at *8 n.11 (S.D. Ala. Apr. 17,

'just' sanctions against a party that violates a discovery order," <u>Hornady v. Outokumpu Stainless USA</u>, 572 F. Supp. 3d 1162, 1187 (S.D. Ala. 2021), a Rule 37 default-judgment sanction "requires a willful or bad faith failure to obey a discovery order" and "is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders," <u>Malautea v. Suzuki Motor Co., Ltd.</u>, 987 F.2d 1536, 1542 (11th Cir. 1993).[21] The Court, in its discretion, eschews analyzing whether default judgment would be proper against Mr. Straub under Rule 37 because it finds that Plaintiffs are entitled to summary judgment against him for unjust enrichment.

The "essence" of the theory of unjust enrichment under Alabama law is that "a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." <u>Dickinson v. Cosmos Broad. Co., Inc.</u>, 782 So. 2d 260, 266 (Ala. 2000) (emphases omitted). "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." <u>Battles v. Atchison</u>, 545 So. 2d 814, 815 (Ala. Civ. App. 1989). More precisely, the remedy of restitution is designed to offset the detrimental effects caused by unjust enrichment. <u>Utah Foam Prods., Inc. v. Polytec, Inc.</u>, 584 So. 2d 1345, 1351 (Ala. 1991). The success of a claim for unjust enrichment "depends on the particular facts and circumstances of each case," permitting a trial court to balance the equities and take into account competing principles to determine if the defendant was unjustly enriched. <u>Scrushy v. Tucker</u>, 955 So. 2d 988, 1011 (Ala. 2006).

---

2015) ("Section 8-8-10 controls post-judgment interest. Alabama Code Section 8-8-1 determines prejudgment interest.").

[21] "A district court may [also] impose case-ending sanctions for litigation misconduct under its inherent power," <u>Hornady</u>, 572 F. Supp. 3d at 1185, although Plaintiffs explicitly move for default judgment against Mr. Straub pursuant to Rule 37, (Doc. 48-2 at 4–5).

The claim "sounds in the nature of quasi-contract, as the law equitably implies a contract between the parties to prevent the unjust enrichment of a defendant at the expense of a plaintiff." White v. Microsoft Corp., 454 F. Supp. 2d 1118, 1132 (S.D. Ala. 2006). Where an express contract exists between two parties, Alabama law generally will not recognize an implied contract with respect to the same subject matter. Kennedy v. Polar-BEK & Baker Wildwood P'ship, 682 So. 2d 443, 447 (Ala. 1996). However, defendants that are not parties to a contract cannot be liable for breaching it. E.g., Allen v. Baker, 99 So. 3d 324, 330–31 (Ala. Civ. App. 2012).[22]

Here, Plaintiffs' well-pleaded factual allegations, which the Court deems admitted pursuant to S.D. Ala. CivLR 56(d), establish that Plaintiffs entered into a home construction contract with Straub Builders; that, in contracting with Straub Builders, Plaintiffs relied upon Mr. Straub's representations that Straub Builders "was a capable, competent and reliable" building company; and that absent such representations, Plaintiffs would not have contracted with Straub Builders. (Doc. 48-3 at 1) (signed declaration of Deborah Pigeon). Further, pursuant to the construction contract, Plaintiffs advanced Defendants $134,000 to begin construction for the house, which was supposed to be finished by May 2021. (Doc. 57-1 at 1–2; Doc. 48-3 at 2). In March 2021, Plaintiffs requested that Defendants make "every effort to cancel any material orders that could be cancelled" and asked that Defendants return all unspent funds, and Defendants provided copies of the checks representing the $39,680.43 given to construction vendors. (Doc. 57-1 at 2). In response to Plaintiffs' repeated pleas for the return of their unspent funds, "Defendant Fred Straub promised to repay [Plaintiffs] the [unspent funds] using proceeds

---

[22] The first page of the building contract notes that the agreement is between Dean and Deborah Pigeon and Straub Builders, not Mr. Straub. (Doc. 48-3 at 4). See Wireman v. Park Nat'l Corp., No. 20-14096, 2021 WL 3045347, at *5 (11th Cir. July 20, 2021) ("Under Alabama law, a claim for unjust enrichment is incompatible with a claim for breach of contract where there is no dispute that an express contract existed *between the parties*.") (emphasis added).

from the sale of his personal condominium." (Id.; see also Doc. 48-3 at 8 (text from a contact named "Freddie" seemingly acknowledging $100,000 in payments due to be paid in three installments) and id. at 10 (text from Freddie stating that he has "four potential plans . . . but selling [his] unit is the main one")). "Finally, in June 2022, after more than a year of demand, Defendants sent us three checks for $5,000, one of which was returned for insufficient funds." (Doc. 57-1 at 2). Defendants have not repaid anything further to Plaintiffs. (Id.).

Plaintiffs establish that, prior to sending the three $5,000 checks (one of which bounced), Mr. Straub knowingly held onto $94,319.57 of Plaintiffs' funds that ought to have been returned to them, and which Plaintiffs reasonably expected would be returned to them. See Portofino Seaport Vill., LLC v. Welch, 4 So. 3d 1095, 1098 (Ala. 2008) ("To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."). Mr. Straub's continued retention of Plaintiffs' $84,319.57 is undoubtedly unjust under Alabama law. See RREF RB-AL SLDL, LLC v. Saxon Land Dev., 968 F. Supp. 2d 1133, 1141 (M.D. Ala. 2013) ("One is unjustly enriched if his retention of a benefit would be unjust."); see also Jordan v. Mitchell, 705 So. 2d 453, 458 (Ala. Civ. App. 1997) ("Retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.").

Given the combination of Plaintiffs' understanding that Straub Builders would construct their planned home in Orange Beach and that Mr. Straub would subsequently return the unspent funds upon the contract's recission with Mr. Straub's refusal to repay the remaining balance, Mr. Straub was unjustly enriched at Plaintiffs' expense. Cf. Jordan, 705 So. 2d at 458 ("In the

absence of mistake or misreliance by the donor, or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched.") (emphasis included). Plaintiffs are thus due **$84,319.57** (plus prejudgment interest), "the amount by which [Mr. Straub] remain[s] enriched at Plaintiffs' expense." (Doc. 48-2 at 10); see Opelika Prod. Credit Ass'n, Inc. v. Lamb, 361 So. 2d 95, 99 (Ala. 1978) ("Where the plaintiff has suffered a detriment, and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiff's loss. The measure of the defendant's liability is . . . limited to the value of the benefit received . . . ."). Accordingly, Plaintiffs' motion for summary judgment against Mr. Straub is **GRANTED**.

### III.  CONCLUSION

In sum, it is **ORDERED** that Plaintiffs' Motion, (Doc. 48), is **GRANTED in part** such that default judgment is granted against Straub Builders while summary judgment is granted against Mr. Straub.

**DONE** this **4th** day of **September 2024**.

**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**